**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
Yitzchak Kopel (*Pro Hac Vice Forthcoming*)
Caroline C. Donovan (*Pro Hac Vice Forthcoming*)
Victoria X. Zhou (*Pro Hac Vice Forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com
ykopel@bursor.com
cdonovan@bursor.com
vzhou@bursor.com

**BURSOR & FISHER, P.A.**
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jwilner@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAJAYE HOKES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZEUS NETWORKS, LLC,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

**PAGE(S)**


NATURE OF THE ACTION ........ 1

THE PARTIES ........ 2

JURISDICTION AND VENUE ........ 2

FACTUAL ALLEGATIONS ........ 2

I. HISTORY AND OVERVIEW OF THE VPPA ........ 2

II. DEFENDANT DISCLOSES WEBSITE USERS' PERSONALLY IDENTIFIABLE INFORMATION TO VIMEO ........ 3

A. Testing Reveals Defendant Disclosed Users' PII To Vimeo ........ 3

B. Defendant Discloses Users' E-mails And User IDs To Vimeo ........ 5

C. Defendant Discloses Users' Video-Viewing Information To Vimeo ........ 6

III. DEFENDANT DISCLOSES USERS' PERSONALLY IDENTIFIABLE INFORMATION TO VIMEO FOR THE PURPOSES OF MARKETING ANALYTICS, AND DATA MONETIZATION ........ 6

IV. DEFENDANT KNOWINGLY DISCLOSES USERS' PII TO VIMEO ........ 8

V. EXPERIENCE OF PLAINTIFF ........ 9

CLASS ALLEGATIONS ........ 9

CAUSE OF ACTION ........ 11

PRAYER FOR RELIEF ........ 12

JURY TRIAL DEMANDED ........ 13

Plaintiff Lajaye Hokes ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant Zeus Networks, LLC ("Zeus" or "Defendant") for violating the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.

2. The United States Congress passed the VPPA in 1988, seeking to confer onto consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8. "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Id.*

3. The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710.

4. Zeus is a subscription-based video on demand streaming service that creates its own original pre-recorded shows. Zeus was founded by social media personalities Lemuel Plummer, DeStorm Power, Amanda Cerny, and King Bach, and its programs focus heavily on influencers.

5. Zeus Networks, LLC owns and operates a website at www.thezeusnetwork.com (the "Website"). Zeus sells subscription memberships to its video content, which allows members to stream movies and TV shows 24/7 ("Zeus Network Service.").

6. The Zeus Network Service is available to stream in the United States.

7. Unbeknownst to Plaintiff and Class Members, when they watched videos on the Website, Defendant knowingly and intentionally disclosed users' personally identifiable information—including a record of every video viewed by the user—to unrelated third parties, including but not limited to Vimeo, Inc. By doing so, Defendant violated the VPPA.

8. Plaintiff brings this action for damages and other legal and equitable remedies resulting from Defendant's violations of the VPPA.

## THE PARTIES

9. Plaintiff Lajaye Hokes is, and has been at all relevant times, a resident of Oakland, California, and has an intent to remain there, and is therefore a citizen of California.

10. Defendant Zeus Networks, LLC is a Delaware limited liability company. Defendant develops, owns, and operates the Zeus Network Service, which is available throughout the United States.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the VPPA).

12. This Court has personal jurisdiction over Defendant because Defendant is headquartered in California at 5250 Lankershim Blvd., 6th Floor, North Hollywood, CA 91601.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

### I. HISTORY AND OVERVIEW OF THE VPPA

14. The impetus for the VPPA begins with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court. During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper which then published that record. Congress responded by passing the VPPA, with an eye toward the digital future. As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. I think that is wrong.

S. Rep. 100-599, at 5-6 (cleaned up).

15. In 2012, Congress amended the VPPA, and in so doing, reiterated the VPPA's applicability to "so-called 'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones." S. Rep. 112-258, at 2.

16. The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

17. The VPPA defines personally identifiable information ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3).

18. A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

## II. DEFENDANT DISCLOSES WEBSITE USERS' PERSONALLY IDENTIFIABLE INFORMATION TO VIMEO

### A. Testing Reveals Defendant Disclosed Users' PII To Vimeo

19. Prior to the commencement of this action, Plaintiff's counsel retained a private research company to conduct a dynamic analysis of the Website. A "dynamic analysis" records the transmissions that occur from a user's device.

20. The private researchers tested what information (if any) Defendant discloses when a user watches a pre-recorded video on the Website.

21. The analysis first established that Defendant incorporates multiple "application programming interfaces" ("APIs") or "software development kits" ("SDKs") into the Website.

22. APIs "enable[] companies to open up their applications' data and functionality to external third-party developers, business partners, and internal departments within their companies."[1]

---

[1] *Application Programming Interface (API)*, IBM, https://www.ibm.com/cloud/learn/api.

An API can "work[] as a standalone solution or included within an SDK … [A]n SDK often contains at least one API."[2]

23. An SDK "is a set of software-building tools for a specific program."[3]

24. As used herein, "SDK" and "API" are referring to the same software.

25. Defendant integrates the Vimeo API, an API owned and operated by Vimeo, Inc., into its Website.

26. Vimeo is an over-the-top ("OTT") video platform that is a "one-stop shop for everything from editing to distribution."[4]

27. The Vimeo API allows users (such as Zeus) to host and sell streaming content, such as the Zeus Network. However, it also functions to provide detailed analytics for advertising purposes.

28. Specifically, Vimeo offers creators like Defendant a comprehensive technological toolset to "[i]mprove growth and scale seamlessly."[5] This ranges from video editing and trimming, to transcription tools, to "[b]est-in-class analytics," "[g]lobal payment processing" services, "monetization options," and more.[6] The plethora of technological and support options that Vimeo provides creators like Defendant allows Defendant to "launch a video subscription channel" with the full support of "all the tools and tech [Defendant] need[s] to grow [its] audience."[7] In sum, Vimeo lets creators like Defendant "[f]ocuse on [their] content" while Vimeo "handle[s] the tech."[8]

29. The dynamic analysis found that when Zeus Network Service users watch videos on the Website, Defendant discloses to Vimeo via the Vimeo API a user's

---

[2] *SDK vs. API: What's the Difference?*, IBM (July 13, 2011), https://www.ibm.com/blog/sdk-vs-api/.

[3] *Id.*

[4] *Blog*, VIMEO, https://vimeo.com/blog/post/vimeo-video-settings-upload.

[5] VIMEO, https://tinyurl.com/3m3aj7e3.

[6] *Id.*

[7] *Id.*

[8] VIMEO, https://vimeo.com/ott.

(i) e-mail address, (ii) user ID, and (iii) the video title, video ID, and video URL of the video the user watches.

30. As the below screenshot from the dynamic analysis indicates, aforementioned pieces of information are disclosed by Defendant to Vimeo in a single transmission. Thus, no linkage between the identity of the user and the title of the video he or she is watching is required:




### B. Defendant Discloses Users' E-mails And User IDs To Vimeo

31. As the dynamic analysis established, Defendant disclosed a user's e-mail address to Vimeo when a user streams content on the Website.

32. An email address is a unique string of letters and numbers which designates an electronic mailbox. As industry leaders,[9] trade groups,[10] and courts[11] agree, an ordinary person can use an email address to uniquely identify another individual. Indeed, there exists multiple services that enable anyone with internet access and a credit card to look up who owns a particular email address.

---

[9] Allison Schiff, *Can Email Be The Next Big Online Identifier?*, AD EXCHANGER (Aug. 25, 2020), https://www.adexchanger.com/data-exchanges/can-email-be-the-next-big-online-identifier/ (quoting Tom Kershaw, CTO of Magnite, who said "[a]n email address is universally considered to be PII, so as such it can never be a valid identifier for online advertising").

[10] NETWORK ADVERTISING INITIATIVE, NAI CODE OF CONDUCT 19 (2020), https://thenai.org/wp-content/uploads/2021/07/nai_code2020.pdf (identifying email as PII).

[11] *See United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Email addresses fall within the ordinary meaning of information that identifies an individual. They can prove or establish the identity of an individual.").

```
https://www.thezeusnetwork.com/videos/new-episode-baddies-caribbean-happy-birthda
y-lemmie
```

33. The following screenshot of the dynamic analysis depicts Defendant transmitting a Website users' e-mail address to Vimeo via the Vimeo API:

```
user_email: h.garciapez@gmail.com
```

34. In addition, Defendant discloses users' user IDs to Vimeo via the Vimeo API. A user ID is a unique string of numbers that Defendant assigns to an individual user after a user creates a Zeus account. The unique user IDs provide Vimeo with an additional identifier to track and categorize an individual user.

35. The following excerpt of the dynamic analysis show Defendant transmitting to Vimeo through the Vimeo API a Website user's user ID:

```
user_id: 55278846
```

**C. Defendant Discloses Users' Video-Viewing Information To Vimeo**

36. As the dynamic analysis established, Defendant discloses to Vimeo the full name of the video viewed by Website users in the form of the URL. The following image shows Defendant disclosing a Website user's watched video:

37. Notably, the disclosed video's URL contains the full title of the watched video, in this case, "Baddies Caribbean[:] Happy Birthday Lemmie."

38. In addition, the dynamic analysis captured Defendant disclosing the fact that users in fact watched a video (not that this is necessary for a VPPA claim). The below screenshot shows Vimeo logging an event, "view: video":

```
view: video
```

## III. DEFENDANT DISCLOSES USERS' PERSONALLY IDENTIFIABLE INFORMATION TO VIMEO FOR THE PURPOSES OF MARKETING ANALYTICS, AND DATA MONETIZATION

39. Defendant transmits its users' e-mail addresses, user ID, and video-viewing information to Vimeo via the Vimeo API so that Defendant can analyze user data, launch marketing campaigns, and target specific users or specific groups of users to receive certain content. All of this

helps Defendant monetize the Zeus Network Service and maximize revenue to retain and expand its paying user base.




40. Vimeo's video analytics provides technological capabilities that further Defendant's marketing, analytics, and advertising capacities.

41. Indeed, Vimeo provides creators like Defendant an entire toolkit to help "Monetize [C]ontent."[12] The Vimeo "Video monetization platform" assists Defendant in "[t]urn[ing] [its] videos into revenue."[13] In this manner, Vimeo is much more than a mere video hosting platform.

42. In addition to the video creation, sharing, and maintenance capabilities required to sustain an ordinary video streaming business, Vimeo provides creators like Defendant with "[a]nalytics … to help inform … content and distribution strategies."[14] And the Vimeo OTT technology package offers creators like Defendant the ability to "[g]o global" and reach "audiences in every market, language, and currency," all while retaining "[f]ull control of … [Defendant's] brand and subscriber data."[15]

---

[12] *Monetize Content*, VIMEO, https://vimeo.com/solutions/video-monetization?vcid=42493&utm_medium=cpc&utm_

[13] *Id.*

[14] *Id.*

[15] *OTT*, VIMEO, https://vimeo.com/ott?vcid=42493&utm_medium=cpc&utm.

43. Further, Vimeo's video analytics toolset allows Defendant to "[m]onitor viewer behavior anywhere …. [Defendant can] [g]o beyond just view-count to learn how people are watching and when they're dropping off, then apply all [these] learnings to improve future content."[16]

44. These tools specifically provide "real-time insights" … [so Defendant can] [t]rack relevant metrics like registration, interactivity, audience size," and later "revisit analytics any time."[17]

## IV. DEFENDANT KNOWINGLY DISCLOSES USERS' PII TO VIMEO

45. Based on the above, it is abundantly clear that Defendant *intentionally* and *knowingly* discloses to Vimeo its users' personally identifiable information and video-viewing information.

46. Notably, Defendant retains full control of subscribers' data that it collects.[18] Therefore, Defendant is intentionally *choosing* to send its subscribers' data to Vimeo to obtain the benefits of Vimeo's analytics, advertising, and marketing capabilities. Defendant sends its subscribers' PII—including their video-viewing information—to Vimeo to "[a]ttract more subscribers," "[s]ell on-demand content globally," and learn how to "[o]ptimize [its] content."[19]

47. Further, common sense dictates that a sophisticated media industry participant like Defendant—who integrated the Vimeo API precisely for its marketing, advertising, and analytics capabilities—is fully aware of the scope of the data that Vimeo receives. Indeed, Defendant would need to contract with Vimeo specifically for its marketing, advertising, and analytics services, in order for the technologies here at issue to be implemented into the Zeus Network Service.

48. Therefore, Defendant knowingly and intentionally provides personal information and video-viewing information to Vimeo for marketing, advertising, and analytics services.

---

[16] *Video Analytics*, VIMEO, https://vimeo.com/features/video-analytics?vcid=42493&utm_medium=cpc&utm_.

[17] *Id.*

[18] VIMEO, https://vimeo.com/ott (noting how creators like Defendant retain "[f]ull control of [their] … subscriber data.").

[19] *Create an OTT platform*, VIMEO, https://vimeo.com/ott; *Monetize Content*, VIMEO, https://vimeo.com/solutions/video-monetization.

## V. EXPERIENCE OF PLAINTIFF

49. In or around August 2021, Plaintiff Lajaye Hokes created an account and purchased a subscription to the Zeus Network Service. Shortly thereafter, Plaintiff began watching content on Zeus Network on the Website. From August 2021 through at least January 2026, Plaintiff regularly watched pre-recorded videos on the Website.

50. Plaintiff provided Defendant with her name, e-mail address, and credit card information as part of signing up for the Zeus Network Service.

51. At all relevant times, Plaintiff never consented to, agreed to, or otherwise permitted Defendant's disclosure of her PII to third parties, including Vimeo.

52. Likewise, Defendant never gave Plaintiff the opportunity to prevent the disclosure of her PII to third parties, including Vimeo.

53. Nevertheless, each time Plaintiff viewed a pre-recorded video on the Zeus Network Service through the Website, Defendant disclosed Plaintiff's PII to Vimeo via the Vimeo API. Specifically, Defendant disclosed Plaintiff's: (i) e-mail address, (ii) the user ID, and (iii) video-viewing information including the video name, video ID, and the fact that Plaintiff actually watched the video.

54. Using this information, Vimeo was able to identify Plaintiff and attribute her video viewing records to an individualized profile of Plaintiff. Vimeo compiled Plaintiff's PII and activity on the Zeus Network Service (including video-viewing information), which Defendant used and continues to use for marketing, advertising, and analytics purposes.

## CLASS ALLEGATIONS

55. **Class Definition:** Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the United States who subscribed to the Zeus Network Service, viewed pre-recorded videos on the Website, and had their PII transmitted to a third party without consent (the "Class").

56. Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

57. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of Class Members. However, given the popularity of Zeus Network, the number of persons within the Class is believed to be in the hundreds of thousands and therefore so numerous that joinder of all members is impractical.

58. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the Class Members that predominate over questions that may affect individual Class Members include:

(a) whether Defendant collected Plaintiff and Class Members' PII;

(b) whether Defendant unlawfully disclosed and continues to disclose Zeus Network users' PII, including their video viewing records, in violation of the VPPA;

(c) whether Defendant's disclosures were committed knowingly; and

(d) whether Defendant disclosed Plaintiff's and Class Members' PII without consent.

59. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class Members, watched videos on the Website, and had her PII collected and disclosed by Defendant to third parties, such as Vimeo.

60. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the VPPA and its state-inspired offspring. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff can fairly and adequately represent and protect the interests of the Class. Neither Plaintiff nor her counsel have any interest adverse to, or in conflict with, the interests of the absent Class Members. Plaintiff has raised viable statutory claims, of the type reasonably expected to be raised by Class Members, and Plaintiff will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Class.

61. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSE OF ACTION

### COUNT I
### VIOLATION OF THE VPPA,
### 18 U.S.C. § 2710

62. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

64. Defendant is a "video tape service provider" as defined by the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), inasmuch as Defendant provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via the Zeus Network Service.

65. Plaintiff and Class Members are "consumers" as defined by the VPPA because they purchased a subscription to the Zeus Network Service. 18 U.S.C. § 2710(a)(1).

66. Plaintiff and Class Members requested or obtained pre-recorded videos on the Website. During these occasions, Defendant disclosed Plaintiff's and Class Members' PII to third party Vimeo. Specifically, Defendant disclosed Plaintiff's and Class Members': (i) e-mail address,

(ii) user ID, and (iii) the title of the videos Plaintiff and Class Members watched and the video ID, as well the fact that Plaintiff and Class Members actually viewed the videos.

67. The information disclosed by Defendant constitutes "personally identifiable information" because it enables even an ordinary person to identify who a specific person is and what pre-recorded videos they requested or obtained. 18 U.S.C. § 2710(a)(3).

68. Defendant's transmissions of Plaintiff's and Class Members' PII to and Vimeo constitute "knowing[] disclosures" of Plaintiff's and Class Memberses' "personally identifiable information" to a person as proscribed by the VPPA. 18 U.S.C. § 2710(a)(1).

69. Plaintiff and Class Members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties, including Vimeo.

70. Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, Defendant's disclosures to Vimeo were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

71. On behalf of herself and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) An award of statutory damages to the extent available;

(e) For punitive damages, as warranted, in an amount to be determined at trial;

(f) For prejudgment interest on all amounts awarded;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: January 13, 2026

Respectfully submitted,

By: */s/ Max S. Roberts*
Max S. Roberts

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
Yitzchak Kopel (*Pro Hac Vice Forthcoming*)
Caroline C. Donovan (*Pro Hac Vice Forthcoming*)
Victoria X. Zhou (*Pro Hac Vice Forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com
ykopel@bursor.com
cdonovan@bursor.com
vzhou@bursor.com

**BURSOR & FISHER, P.A.**
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jwilner@bursor.com

*Attorneys for Plaintiff*